United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In the Matter of the Arbitration Between          No. C 12-0281 MMC

12   CITY OF COLFAX,                                    **ORDER DENYING PETITIONS TO**
                                                        **VACATE OR MODIFY AWARD OF**
13              Petitioner,                             **ARBITRATOR; GRANTING CROSS-**
                                                        **MOTION TO CONFIRM ARBITRATOR'S**
14      v.                                              **AWARD**

15   STATIONARY ENGINEERS LOCAL 39
     HEALTH AND WELFARE TRUST FUND,
16
                Respondent.
17   /

18   CITY OF COLFAX,                                    No. C 12-0562 MMC

19              Petitioner,

20      v.

21   STATIONARY ENGINEERS LOCAL 39
     HEALTH AND WELFARE TRUST FUND,
22
                Respondent.
23   /

24

25          Before the Court are (1) petitioner City of Colfax's ("City") Petition to Vacate or

26   Modify Award of Arbitrator, and (2) respondent Stationary Engineers Local 39 Health and

27   Welfare Trust Fund's ("Trust Fund") Cross-Motion to Confirm Arbitration Award, filed

28   respectively January 18, 2012 and February 1, 2012 (Case No. 12-0281).  Also before the

1  Court is the City's Petition to Vacate or Modify Award of Arbitrator, filed January 27, 2012 in

2  the Superior Court for the County of Alameda and thereafter removed to federal district

3  court February 2, 2012 (Case No. 12-0562).  The matters came on regularly for hearing

4  March 23, 2012.  Joseph E. Wiley of Wiley Price & Radulovich, LLP appeared on behalf of

5  the City.  Linda Baldwin Jones and Theodore Franklin of Weinberg, Roger & Rosenfeld

6  appeared on behalf of the Trust Fund.  Having read and considered the parties' respective

7  written submissions, and having considered the oral arguments of counsel, the Court rules

8  as follows.

9                                          **BACKGROUND**

10         The arbitration at issue arose out of a dispute related to the amount of contributions

11  the City owes to the Trust Fund.  The arbitrator summarized the factual background as

12  follows:[1]

13              The parties agree that the City of Colfax was bound to a MOU [Memorandum
       of Understanding] which expired on July 1, 2007.  Pursuant to the terms of that
14     contract, [the City] made contributions to the Trust Fund on behalf of its employees
       who were represented by the Union [Stationary Engineers Local 39].  Those
15     employees, in turn, received health benefits provided by the Trust Fund health and
       welfare plan.  After that MOU expired, the bargaining parties apparently maintained
16     the status quo but failed to enter into a successor MOU until March 2010 ["2010
       MOU"].  When the successor MOU was executed, the parties agreed that the
17     document would be retroactive to July 1, 2008.

18              Concurrently with the MOUs in effect, the parties entered into a separate
       Subscriber Agreement which allowed [the City] to enroll employees who were not
19     represented by the Union into the health plan sponsored by the Trust.  This
       agreement was signed by [the City] and the Union in late October and early
20     November 2000.  It bound the City of Colfax to the Trust Agreement and all rules
       and regulations adopted by the Trust Fund's Board of Trustees from time to time.  In
21     fact, [the City] did enroll non-represented employees in the health plan for many
       years pursuant to the Subscriber Agreement.
22
                Concurrently In accordance with the audit program instituted by the Trust Fund Trustees,
23     the Trust employed the services of Lindquist LLP, a CPA firm, to perform two audits
       of [the City's] payroll records–one covering October 1, 2002 through November 30,
24     2006, and the other covering December 1, 2006 through May 31, 2010.  The audits
       resulted in a substantial claim for unpaid health benefit contributions on behalf of
25     non-represented city employees.

26              The Colfax City Manager, Bruce Kranz, testified at the arbitration hearing that

27  ───────────────────────

28         [1] Neither party disputes the accuracy of the arbitrator's summary of the factual
    background or description of the parties' respective arguments.

the MOU he negotiated with the Union in 2010 was made retroactive at the behest of Local 39.  Accordingly, he took the position that the new MOU language found in Article 7, Section A which limited the medical plan to employees represented by the Union superseded the Subscriber Agreement which had permitted non-represented employees to participate in the health plan.  When the Trust Fund presented Colfax with the payroll audit results which called for payments of $101,642.11 and $38,411.47 in unpaid health benefit contributions plus interest, liquidated damages, and costs, [the City] objected, since the bulk of those payments were to cover non-represented city employees for the time period after July 1, 2008.  [The City] stipulated that it owed moneys due prior to the July 1, 2008 MOU date.  That sum totals $57,460.00 in contributions, interest, liquidated damages, and fees.

Union official and Trust Fund Trustee Bart Florence testified that after the [2010 MOU] was negotiated by the bargaining parties, he sent a notice on behalf of the Union to Colfax terminating the Subscriber Agreement.  The termination letter was dated March 24, 2010 and made effective by its terms April 30, 2010.  Both the Employer and the Trust Fund acknowledged that two Colfax non-represented employees, the Finance Director and the Community Services Director, continued to have contributions made on their behalf until the Subscriber Agreement was terminated in 2010.

At the arbitration hearing, the Trust Fund presented an exhibit outlining the total contributions, damages, interest, and fees allegedly due and owing for [the] time period covering July 1, 2008 through May 31, 2010.  The claim totaled $80,219.31 in underpayments shown by the audit, including fees, interest , and damages, and an additional $2,496.89 in improper payments.

(Decl. of Linda Baldwin Jones in Supp. of Respondent's Mot. to Confirm Arbitration Award,

Case No. 12-0281, filed February 1, 2012, Ex. A at 4-6 ("Arbitrator's Award").)

The arbitrator found the City had an obligation to continue making payments on

behalf of non-represented employees until April 30, 2010, the effective termination date of

the Subscriber Agreement, and awarded the Trust Fund $82,716.20 in payments, as well

as attorneys' fees in the amount of $9483.58.  (See Arbitrator's Award at 7.)

## DISCUSSION

**I.     Timeliness of the Federal Petition**

As an initial matter, the Trust Fund argues the City's motion must be denied as

untimely.

Under the Federal Arbitration Act, "[n]otice of a motion to vacate, modify, or correct

an award must be served upon the adverse party or his attorney within three months after

the award is filed or delivered."  See 9 U.S.C. § 12.  In the instant case, it is undisputed that

the arbitrator's award was delivered to the parties on October 19, 2011.  (See Decl. of Joan

3

1   Pugh Newman in Supp. of Pet. by City of Colfax to Vacate or Modify Award of Arbitrator,

2   Case No. 12-0281, filed January 18, 2012 ("Newman Decl.") at 3:6-7.)  Consequently, any

3   motion to vacate or modify the award was required to be served by January 19, 2012.  See

4   9 U.S.C. § 12.  Although it also is undisputed that the petition in Case No. 12-0281

5   (hereinafter, "Federal Petition") was filed and served no later than January 18, 2011 (see

6   Opp., Case No. 12-0281, filed Feb. 1, 2012, at 8:9-12), the Trust Fund argues said Federal

7   Petition did not satisfy the requirements of 9 U.S.C. § 12 because it initially failed to include

8   a hearing date and time as required for noticed motions by the Civil Local Rules of this

9   district.  See Pfannenstiel v. Merril Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158

10   (10th Cir. 2007) ("A party to an arbitration award who fails to comply with the statutory

11   precondition of timely service of notice forfeits the right to judicial review of the award")

12   (internal quotation and citation omitted); Civil L.R. 7-2 (providing "a motion must contain . . .

13   the noticed hearing date and time").

14        The Trust Fund's argument elevates form over substance.  By filing its petition within

15   the time period specified, the City substantially complied with 9 U.S.C. § 12, the purpose of

16   which is to avoid unnecessary delay in arbitration proceedings.  See Florasynth, Inc. v.

17   Pickholz, 750 F.2d 171, 177 (2d Cir. 1984) (noting, in addressing issue of timeliness under

18   § 12, "[t]he role of arbitration as a mechanism for speedy dispute resolution disfavors

19   delayed challenges to the validity of an award").  Moreover, "[a] local rule imposing a

20   requirement of form must not be enforced in a way that causes a party to lose any right

21   because of a nonwillful failure to comply."  Fed. R. Civ. P. 83(a)(2).  Here, the City states it

22   omitted the hearing date and time because it believed such matters would be set by the

23   judge to whom the case ultimately would be assigned.  (See Decl. of Monna R. Radulovich

24   in Supp. of Pet. by City of Colfax to Vacate or Modify Award of Arbitrator, Case No. 12-

25   0281, filed Feb. 8, 2012, at 1:26-2:3.)  Consistent therewith, the title page of the subject

26   petition includes the following: "Date:," "Time:," "Dept.:" and "Before:," all of which are left

27   blank.  (See Federal Petition at 1.)  There is no evidence suggesting the City's omission of

28   those details was anything other than in good faith.

1    Accordingly, the Court finds the Federal Petition was timely filed and served.

2    **II.     Disqualification**

3    In the removed action (hereinafter, "State Petition"), the City argues the arbitrator's

4    award must be vacated because, according to the City, the arbitrator failed to make

5    disclosures required by the California Arbitration Act.  See Cal. Civ. Proc. Code § 1286.2(a)

6    (providing "the court shall vacate the award if the court determines . . . an arbitrator making

7    the award . . . failed to disclose within the time required for disclosure a ground for

8    disqualification of which the arbitrator was then aware").  In particular, the City notes that

9    the arbitrator had been, 18 years earlier, a partner in the law firm that represented the Trust

10   Fund in the instant arbitration, Weinberg Roger & Rosenfeld, and asserts such association

11   should have been disclosed.  (See State Petition at 5:12-21, 7:13-16.)

12   "In any arbitration pursuant to an arbitration agreement, when a person is to serve

13   as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could

14   cause a person aware of the facts to reasonably entertain a doubt that the proposed

15   neutral arbitrator would be able to be impartial."  See Cal. Civ. Proc. Code § 1281.9(a).

16   Such matters include "[a]ny professional or significant personal relationship the proposed

17   neutral arbitrator . . . has or has had with any party to the arbitration proceeding or lawyer

18   for a party."  See id. § 1281.9(a)(6).  The California Arbitration Act, however, provides an

19   exception for "an arbitration conducted pursuant to the terms of a collective bargaining

20   agreement."  See Cal. Civ. Proc. Code § 1281.9(e); see also id. § 1286.2(a)(6) providing

21   exception for "arbitration proceedings conducted under a collective bargaining agreement

22   between employers and employees or between their respective representatives").  The

23   Trust Fund argues the arbitration is covered by the statutory exception.  The Court agrees.

24   Contrary to the City's argument, the arbitration here was conducted "pursuant to the

25   terms of a collective bargaining agreement."  See Cal. Civ. Proc. Code § 1281.9(e).  The

26   Trust Agreement, which provides for binding arbitration and sets forth the specific

27   procedures under which the instant arbitration was conducted, expressly states at the

28   outset: "The Employers and the Unions have negotiated the following terms and provisions

5

as the terms and provisions of the Trust Agreement governing the establishment and administration of the Stationary Engineers Welfare Fund." (See Newman Decl. Ex. G at 1 (emphasis added).) Consequently, the Trust Agreement itself is a collective bargaining agreement. See Black's Law Dictionary 299 (9th ed. 2009) (defining "collective-bargaining agreement" as "[a] contract between an employer and a labor union regulating . . . benefits").[2] Additionally, both of the above-referenced MOUs, are, as the City admits, collective bargaining agreements. (See Reply, Case No. 12-562, filed Feb. 23, 2012, at 2:22-24.) In both said MOUs, the City "agree[d] to accept, assume and be bound by all of the obligations imposed upon [the City] by that certain Trust Agreement . . . and further agree[d] to be bound by any amendments, modifications, changes or mergers with respect to said Trust Agreement." (See Newman Decl. Ex. B at 17, Ex. C at 20). Because the MOUs expressly incorporate the terms of the Trust Agreement, including its arbitration provisions, the instant arbitration was conducted pursuant to the terms of the MOUs, and, consequently, even if the Trust Agreement did not itself constitute a collective bargaining agreement, the exception for collective bargaining agreements applies.

Accordingly, the arbitration award is not subject to vacatur by reason of any claimed non-compliance with the disclosure requirements of the California Arbitration Act.[3]

III.   The Arbitration Award

The City argues the award must be vacated because, the City asserts, the arbitrator exceeded his authority.

Under both the Federal Arbitration Act and the California Arbitration Act, an

---

[2] The City argues the Trust Agreement includes a definition for "Trust Agreement" and a definition for "Collective Bargaining Agreement" as those terms are used therein. For purposes of the exception provided by the California Arbitration Act, however, the Trust Agreement's definitions are not controlling.

[3] In light of this ruling, the Court does not address herein the Trust Fund's alternative argument that any challenge to the arbitrator was waived. Although, as set forth in detail by the Court at the hearing, there is considerable evidence suggesting the City was, before the arbitration, aware of the arbitrator's prior association with counsel for the Trust Fund, any determination of the issue would require additional written submissions and/or an evidentiary hearing.

1    arbitration award is subject to vacatur where the arbitrator "exceed[s] [his] powers."  See 9

2    U.S.C. § 10(a)(4); Cal. Civ. Proc. Code § 1286.2(a)(4).  "It is well settled," however, that

3    arbitrators do not exceed their powers "merely because they assign an erroneous reason

4    for their decision."  Moncharsh v. Heily & Blase, 3 Cal. 4th 1, 28 (1992) (internal quotation

5    and citation omitted); see also United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.,

6    484 U.S. 29, 38 (1987) ("[A]s long as the arbitrator is even arguably construing or applying

7    the contract and acting within the scope of his authority, that a court is convinced he

8    committed serious error does not suffice to overturn his decision.").  A decision exceeds the

9    arbitrator's powers "only if it is so utterly irrational that it amounts to an arbitrary remaking

10   of the contract between the parties."  Advanced Micro Devices, Inc. v. Intel Corp., 9 Cal.

11   4th 362, 377 (1994); see also Pacific Reinsurance Management Corp. v. Ohio Reinsurance

12   Corp., 935 F.2d 1019, 1024 (9th Cir. 1991) (holding "courts must not decide the rightness

13   or wrongness of the arbitrators' contract interpretation, only whether the panel's decision

14   draws its essence from the contract.") (internal citation and quotation omitted); Bosack v.

15   Soward, 586 F.3d 1096, 1106 (9th Cir. 2009).[4]

16        Here, the arbitrator found "[t]he new MOU, while excluding non-represented city

17   employees from health coverage, must be interpreted in context" and that "[n]othing in that

18   labor agreement suggests it was intended to override the Subscriber Agreement,

19   particularly when [the City] continued to provide health benefits to at least two key city

20   employees who were not represented by the Union."  (See Arbitrator's Award at 7.)  The

21   City argues the arbitrator, in so finding, exceeded his authority, in that he considered what

22   the City characterizes as "[e]xtrinsic evidence of the parties' intent," specifically, the

23   Subscriber Agreement.  (See Federal Petition at 7-8.)  In particular, the City argues, the

24   Subscriber Agreement is inadmissible because the 2010 MOU is not "ambiguous" and also

25   _____

26        [4] Where, as here, the parties have agreed to conduct an arbitration pursuant to the
     terms of the California Arbitration Act (see Newman Decl., Ex. G), the state vacatur
27   standards, rather than the federal, apply, see Johnson v. Gruma Corp., 614 F.3d 1062,
     1067 (9th Cir. 2010).  Under either standard, however, the Court's decision herein would be
28   the same.

1    because the 2010 MOU contains an integration clause.  See Pierce County Hotel Emps.

2    and Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1327 (9th

3    Cir. 1987) (holding "[e]xtrinsic evidence is inadmissible to contradict a clear contract term";

4    noting where term is "ambiguous," court may consider "earlier negotiations, later conduct,

5    related agreements, and industrywide custom") (internal citation omitted); Pace v. Honolulu

6    Disposal Service, Inc., 227 F.3d 1150, 1159 (9th Cir. 2000) (holding integration clause

7    precluded party's reliance on parole evidence of earlier oral agreement).  As discussed

8    below, the Court is not persuaded.

9         The parties agreed to the following statement of the issue to be decided by the

10   arbitrator: "Does the City of Colfax owe fringe benefit contributions, interest, liquidated

11   damages, fees and costs to the Trust Fund as revealed by two audits and a review of

12   reports made by the Employer, and if so, what is the amount due and owing?"  (See

13   Arbitrator's Award at 3.)  To answer that question, it was reasonable for the arbitrator to

14   consider all agreements between the parties bearing on the issue.  In this instance, the

15   Trust Agreement, the 2010 MOU and the Subscriber Agreement, were, by their terms, in

16   effect at the same time and interrelated.

17        In that regard, both the Subscriber Agreement and, as noted above, the 2010 MOU

18   incorporate by reference all provisions of the Trust Agreement.  (See Newman Decl. Ex. C

19   at 20, Ex. J at 3.)  The Trust Agreement, in turn, specifies that "[c]ontributions to the Fund

20   shall be due as provided in the applicable Collective Bargaining Agreements" (see Newman

21   Decl. Ex. G at 5), and broadly defines "Collective Bargaining Agreements" as "the

22   Agreements between Stationary Engineers Local 39 and any . . . Employer which require

23   contributions to the Stationary Engineers Welfare Fund" (see id. at 1).  The Subscriber

24   Agreement, which, as noted by the arbitrator, requires contributions to the Trust Fund, thus

25   constituted a "Collective Bargaining Agreement" under the Trust Agreement, and, as such,

26   was incorporated by reference therein.  In short, the Subscriber Agreement was not

27   "extrinsic evidence."  See Pace, 227 F.3d at 1159 (holding integration clause "foreclose[d]

28   claims of any representations outside the written contract aside from those made in another

8

1    written document executed by the parties").

2        Moreover, the City's primary justification for its failure to make contributions on

3    behalf of non-members after July 1, 2008 is, somewhat ironically, based on extrinsic

4    evidence, specifically, an oral agreement predating the 2010 MOU and assertedly making

5    that agreement retroactive to said date.[5]  There is no provision in the 2010 MOU to such

6    effect, let alone an unambiguous one.[6]  Further, the integration clause in the 2010 MOU is

7    limited by its terms to "the matters set forth [in the 2010 MOU]," (see Newman Decl. Ex. C

8    at 16), which, as noted, do not include any reference to retroactivity.

9        In light of all the above, this Court finds neither the terms of the 2010 MOU nor case

10   authority precluded the arbitrator's consideration of the Subscriber Agreement.  At a

11   minimum, the City has failed to demonstrate the arbitrator, either by considering the

12   Subscriber Agreement or otherwise, arrived at a decision that was "utterly irrational" or

13   amounted to "an arbitrary remaking of the contract between the parties."  See Advanced

14   Micro Devices, Inc., 9 Cal. 4th at 377.

15       In sum, the arbitrator, in making the award, did not exceed his authority, but, rather,

16   reasonably applied the law to the facts as he found them.

17   **IV.  Attorneys' Fees**

18       In its opposition to the Federal Petition, the Trust Fund, citing Int'l Union of

19   Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc., 707 F.2d 425 (9th Cir.

20   1983), includes a request for attorneys' fees.  See id. at 428 (affirming award of attorneys'

21   fees to prevailing party in action to confirm arbitration award; holding "an unjustified refusal

22   to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for

23

24       [5] The Trust Fund has filed objections to various submissions of evidence made by
     the City.  For the reasons set forth on the record at the hearing, said objections are
25   overruled.

26       [6] The Court further notes there is no evidence that, at the time of any such oral
     agreement, the parties had decided to discontinue the City's obligation to contribute on
27   behalf of non-union members, let alone considered the effect a retroactive application of
     such change would have on non-member employees who had incurred medical expenses
28   in reliance on the benefits provided by their election to participate in the Trust Fund.

oppressive reasons").  As the Court noted at the hearing, the Trust Fund's request is premature.  Any request for attorneys' fees must be made by motion in accordance with the Federal Rules of Civil Procedure and the Civil Local Rules of this district.  <u>See</u> Fed. R. Civ. P. 54(d)(2); Civil L.R. 54-5.

**CONCLUSION**

For the reasons set forth above:

1.  The City's petitions are hereby DENIED.

3.  The Trust Fund's cross-motion to confirm the arbitrator's award is hereby GRANTED.

**IT IS SO ORDERED.**

Dated:  April 6, 2012

MAXINE M. CHESNEY
United States District Judge